IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
May 4, 2010 Session

## DAVID JONES MILTON v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Carroll County**
**No. 04CR21      Donald E. Parish, Judge**

**No. W2008-02838-CCA-R3-PC  - Filed June 10, 2010**

The petitioner, David Jones Milton, appeals the denial of his petition for post-conviction relief, arguing that the post-conviction court erred in finding that he received effective assistance of trial counsel.  Following our review, we affirm the denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and J.C. MCLIN, JJ., joined.

Benjamin S. Dempsey, Huntingdon, Tennessee, for the appellant, David Jones Milton.

Robert E. Cooper, Jr., Attorney General and Reporter; J. Ross Dyer, Senior Counsel; Hansel J. McCadams, District Attorney General; and Beth Boswell-Hall, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

The petitioner, who was indicted on one count of aggravated rape, was convicted by a Carroll County jury of the lesser-included offense of aggravated sexual battery and sentenced by the trial court as a Range II, multiple offender to fifteen years at 100 percent in the Department of Correction.  His conviction was affirmed by this court on direct appeal, and our supreme court denied his application for permission to appeal.  State v. David Jones Milton, No. W2005-00646-CCA-R3-CD, 2006 WL 1132072 (Tenn. Crim. App. Apr. 28, 2006), perm. to appeal denied (Tenn. Aug. 21, 2006).

Our direct appeal opinion reveals that the petitioner's conviction stemmed from his

sexual assault of a mentally impaired woman at her apartment at a time when the victim's sister, brother-in-law, and friend were present. Id. at *1. The petitioner gave a series of statements to police in which he at first denied that he even knew the victim but eventually claimed that she had initiated consensual sexual intercourse with him:

> The [petitioner] initially gave a statement to Tim Nanney, an investigator with the McKenzie Police Department, in which he denied knowing the victim, further stating, "All those people are retarded." However, he later admitted knowing the victim, but he still maintained that he did not have sexual intercourse with her. Finally, the [petitioner] gave a statement admitting that he had sex with the victim on the night in question but maintained that it was consensual. In the statement, he asserted that the victim had called him and asked him to come to the apartment and that it was the victim who led him into the bedroom. His statement was consistent with the victim's in that he stated that they first had sex vaginally, then returned to the living room for a few minutes, before the victim asked him if he wanted to return to the bedroom. At that point, the [petitioner] claims he penetrated the victim anally but stopped when she told him that it hurt.

Id. at * 2.

On August 29, 2007, the petitioner filed a *pro se* petition for post-conviction relief in which he alleged that he was denied the effective assistance of counsel. The post-conviction court initially dismissed the petition on the basis that it was filed outside the one-year statute of limitations but, upon proof of the petitioner's timely delivery of the petition to the appropriate prison official for mailing, subsequently appointed post-conviction counsel and vacated its order of dismissal. In his amended petition, the petitioner alleged that counsel was ineffective for, among other things, failing to adequately investigate and prepare for the case and failing to adequately communicate with the petitioner. With respect to the latter allegation, the petitioner asserted that counsel failed to "explain rights and risks of trial and conviction," particularly "in comparison to ramifications of a plea agreement."

At the evidentiary hearing, the victim testified that Angie Wade, a social worker, had helped her write a statement about the crime in 2004. She said that the petitioner's trial counsel never read the statement and never spoke with Ms. Wade.

Trial counsel testified that he was an assistant public defender with the Twenty-Fourth Judicial District and had been licensed to practice law since 1989. He said that, in addition to meetings that took place in the courtroom, he visited with the petitioner "[n]umerous times" at the jail and that the jail's records, which reflected only two visits, were inaccurate,

as he often visited the petitioner without signing the jail visitor's log. During those meetings, he discussed with the petitioner, among other things, the evidence against him, the possible penalties he faced if convicted, and the fact that his prior felony convictions could be used to impeach his credibility if he chose to testify at trial.

Trial counsel testified that he did not file a motion for discovery because the district attorney's office had an open file discovery policy and he received all the relevant information he needed about the case, including the victim's and the petitioner's statements, the various witness statements, a diagram of the crime scene, and the victim's medical records. He did not file a motion to suppress the petitioner's statement because he believed that it helped the petitioner's case by providing a means for him to get the petitioner's claim that the sexual encounter had been consensual before the jury without having to put the petitioner on the stand:

> And my thought on this is; I wanted to be able to get that statement in. And I knew it would hurt in some ways, but it would also at least allow me to get his story across to the jury without putting the risk of putting him on the stand, because he would have made a terrible, terrible witness.

Trial counsel explained that the petitioner continually referred to the victim and her friends as "retards," and that he, for that reason, spent part of his time attempting to coach the petitioner on how to present a more favorable appearance before the jury:

> One of the things I really tried to work with him on, when I would go talk to him, is how to -- if he did have to testify, and I was holding that as a . . . possibility, I tried to work with him on how to be less offensive, because I didn't want him to get on the . . . witness stand and call the victim a retard.

> And that's, generally, how he referred to her and the people present. They were retarded. No one was going to believe them.

> And I just tried my best to prepare him to be as -- the least offensive [possible], but it was really hard.

Trial counsel testified on direct and cross-examination that the petitioner received two different plea bargain offers from the State, both of which he ultimately rejected. The State's first offer was for the petitioner to plead guilty to attempted aggravated sexual battery in exchange for a four-year sentence of split confinement with only 180 days to serve. Trial counsel informed the petitioner of the strengths of the State's case, the weaknesses of the petitioner's defense, and the risk of going to trial, and he attempted very strongly to persuade

the petitioner to accept the offer. The petitioner initially indicated that he would but changed his mind when the time came to enter his pleas. Counsel then requested a continuance and negotiated an even better offer that involved a two-year sentence with 180 days to serve. The petitioner, once again, indicated that he would accept the offer but exhibited an "attitude" and "baulk[ed]" when he appeared before the trial court, which resulted in the court's refusal to accept his plea.

Trial counsel acknowledged that he and the petitioner "had a conflict about every time [he] went and saw him" and that the petitioner at one point asked the trial court to substitute different counsel. However, the petitioner was "so erratic that he might be mad at [counsel] one minute and the next minute things [were] fine." Trial counsel testified that the petitioner did not listen to him and throughout the trial did what he wanted to do, which was why he initially took the stand in his own defense, despite counsel's advice that his testimony would hurt his case, only to change his mind after his colloquy with the trial court:

Q.    And it's your testimony that he was aware that he couldn't testify during the trial?

A.    He could testify, but the jury would hear some very negative things about him.

Q.    Did you tell him that?

A.    Of course I did.

Q.    Why did he try to get on the witness stand, in the middle of the trial, if he knew that?

A.    Because he does not listen to me. He does what he wants to do.

Q.    In fact, did the Judge also advise him the same thing?

A.    Of course.

Q.    And he was recalled from the witness stand; is that right?

A.    He was.

Trial counsel testified that he was fully prepared to try the case and believed that he had done a good job with what he had to work with at trial. On cross-examination, he agreed

that he was able to elicit from the victim and the other witnesses the fact that she had talked six times by telephone to the petitioner after he was in jail, that neither she nor her companions had called 911 or sought help after the alleged rape, and that it was the victim's "protector," Angie Wade, who had contacted the police. Trial counsel also acknowledged that at one point in his cross-examination the victim actually stated that she had not been raped.

The petitioner testified that trial counsel came to visit him in the jail only two times. Counsel told him the range of punishment he faced if convicted of the indicted offense and informed him that he would have to serve his time at 100 percent, but counsel did not show him any discovery or talk about the facts of the case. Instead, counsel just talked to him "about accepting [the] pleas." Counsel conveyed his belief that the petitioner would be convicted at trial, but counsel never discussed with him how his prior convictions could be used against him if he testified. The petitioner stated that he did not learn that his testimony could be impeached by his prior convictions until he "went up to get on the stand" during the trial and that, had he known earlier, he "probably would have accepted the pleas." On cross-examination, he testified that counsel called the witnesses he suggested but did not introduce the phone records that he requested. He also conceded that counsel did, in fact, discuss with him some of the evidence that would be presented against him at trial.

Becky Keith, a criminal investigator with the Carroll County Sheriff's Department, testified on the State's behalf that the jail logs, which were prepared by the jailer on duty, reflected that counsel made four visits to the jail during the relevant time frame, coming twice to see "numerous inmates," and twice to see the petitioner. She agreed, however, that it "could very well be possible" that counsel made additional visits which were not recorded on the logs. Keith further testified that the telephone company with which the jail had a contract at that time did not have the capacity to record inmate telephone calls, so she had no records of any telephone calls made by the petitioner.

On November 24, 2008, the post-conviction court entered a detailed written order denying the petition for post-conviction relief. Among other things, the court found that the petitioner had not met his burden of showing that counsel was deficient in his pretrial investigation or preparation for the case, including his consultations with the petitioner, or in the manner in which he conducted the trial.

## ANALYSIS

On appeal, the petitioner contends that trial counsel provided ineffective assistance by his failure "to conduct pretrial investigation, discovery and motion practice," "to effectively know and understand the case," and to effectively communicate with his client "during the guilty plea phase of the case" and "when advising [him] about his ability to

submit testimony at trial." He further contends that his decision to reject the plea agreement was involuntary due to counsel's failure to advise him of the range of potential sentences he faced if convicted at trial and that his trial testimony could be impeached by his prior felony record. The State argues that the record supports the post-conviction court's findings that the petitioner failed to meet his burden of showing that he was denied the effective assistance of counsel. We agree with the State.

The post-conviction petitioner bears the burden of proving his allegations by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f) (2006). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996). Where appellate review involves purely factual issues, the appellate court should not reweigh or reevaluate the evidence. See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997). However, review of a trial court's application of the law to the facts of the case is *de novo*, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed *de novo*, with a presumption of correctness given only to the post-conviction court's findings of fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); Burns v. State, 6 S.W.3d 453, 461 (Tenn. 1999).

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The Strickland standard is a two-prong test:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996)

(citing Strickland, 466 U.S. at 688; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). The reviewing court must indulge a strong presumption that the conduct of counsel falls within the range of reasonable professional assistance, see Strickland, 466 U.S. at 690, and may not second-guess the tactical and strategic choices made by trial counsel unless those choices were uninformed because of inadequate preparation. See Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). The prejudice prong of the test is satisfied by showing a reasonable probability, *i.e.*, a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

The petitioner first contends that trial counsel provided ineffective assistance based on his failure to conduct adequate pretrial investigation and discovery or to file necessary motions. Trial counsel's testimony, however, which was accredited by the post-conviction court, established that he received and reviewed full discovery from the State, contacted necessary witnesses, and was fully prepared to try the case. Trial counsel explained that he did not believe in filing unnecessary motions and that the prosecutor had an open-file policy on discovery, which provided him with all information he needed about the case. He also explained why he did not file a motion to suppress the petitioner's statement, testifying that he thought it helped the petitioner's case by getting before the jury the petitioner's claim that the sexual encounter had been consensual without having to put the petitioner on the stand. Furthermore, the record reveals that trial counsel conducted effective cross-examination of the victim and her friends and that he achieved a semi-successful outcome to the case, in that the petitioner was convicted of the lesser-included offense of aggravated sexual battery rather than the indicted offense. The petitioner has not, therefore, shown that trial counsel was deficient in his investigation or preparation of the case, or the manner in which he handled the pretrial motions or the cross-examination of witnesses.

The petitioner also contends that trial counsel provided ineffective assistance by his failure to adequately communicate with him about the case, particularly with respect to the fact that his prior convictions could be used by the State to impeach his testimony at trial. The petitioner asserts that "[i]t is obvious from the record that [he] first learned of the impeachment process from the [c]ourt[']s instructions" and that, had he known earlier, he would have accepted the State's plea offers rather than choosing to proceed to trial.

Trial counsel's testimony, however, established that he met with the petitioner numerous times, both in jail and at each court appearance. Trial counsel testified, in fact, that he met with the "erratic" petitioner more than any other client in an effort to satisfy the petitioner's requests, to tone down the petitioner's offensive comments about the victim and her friends in the event that he took the stand, and to improve the petitioner's overall disposition. Trial counsel was also unequivocal in his testimony that he fully informed the

petitioner beforehand of the risks of testifying at trial, including that the State could introduce his prior felony convictions to impeach his testimony. He said that he believed the guilty pleas were very beneficial to the petitioner and strongly encouraged him to accept them, but the petitioner was convinced that he would win at trial and did not listen to his advice. The petitioner has not, therefore, met his burden of showing that counsel was deficient in his communication with him about the case, including in the advice he gave him about the plea agreements and the negative aspects of his testifying at trial.

## CONCLUSION

Based on our review, we conclude that the petitioner has not met his burden of demonstrating that he was denied the effective assistance of trial counsel. Accordingly, we affirm the post-conviction court's denial of the petition.

_____
ALAN E. GLENN, JUDGE